UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/16/2023
```

-------------------------------------------------------X
                                                     :

LEONARDA BAUTISTA, *as Parent and*     :
*Natural Guardian of J.B., and individually,*   :
MARLENE FRIAS, *as Parent and Natural*   :
*Guardian of A.F., and individually,*      :
                                                   :
                            Plaintiffs,   :
                                                     :
                 -against-   :
                                                   :

DAVID C. BANKS, *in his official capacity as*  :
*Chancellor of the New York City Department of*  :
*Education,* and NEW YORK CITY      :
DEPARTMENT OF EDUCATION,     :
                                                   :
                           Defendants.  :
-------------------------------------------------------X

1:23-cv-7366-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.     BACKGROUND

On August 18, 2023, the complaint in this case was filed by two sets of Plaintiffs:

(1) Leonarda Bautista, who brings suit both as the parent and natural guardian of J.B., and

individually; and (2) Marlene Frias, who brings suit both as the parent and natural guardian of A.F.,

and individually. *See* the Complaint ("Compl."), Dkt. No. 1. The complaint asserts that J.B. and

A.F. are each a "child with a disability," as defined by 20 U.S.C. §1401(3)(A)(i); and as a result, each

child is "entitled to receive a [free appropriate public education ('FAPE')] and related services from

the [New York City Department of Education ('DOE')]." Compl. ¶¶ 14–15, 19–20. Each set of

Plaintiffs alleges that they have been denied a FAPE and seeks an order from this Court directing

DOE to comply with the final administrative orders issued by the two students' Impartial Hearing

Officers ("IHOs") in their respective Findings of Fact and Decisions ("FOFDs").  *Id.* ¶¶ 1–5. Plaintiffs further seek reasonable attorneys' fees, claiming that they are the "prevailing parties" in the respective underlying administrative actions.  *Id.* ¶¶ 69, 72.

On August 22, 2023, the Court issued an order to show cause why the Court should not dismiss the claims of all Plaintiffs in this action except Leonarda Bautista, as parent and natural guardian of J.B., and Leonarda Bautista individually, without prejudice to refiling each of their claims in a separate civil action.  Dkt No. 6.  On September 4, 2023, Plaintiffs filed a response.  Plaintiffs' Memorandum of Law ("Pl.s' Mem."), Dkt. No. 8.  In their response, Plaintiffs argued that the essential facts that tie Plaintiffs' two sets of claims are, in essence, that (1) both J.B. and A.F. were entitled to and denied a FAPE "for part of the 2021-2022 school year and the entire 2022-2023 school year;" (2) to ensure their FAPEs, IHOs had ordered the New York City Department of Education "to fund each Student's tuition and related services at their private school, iBRAIN, including special transportation and nursing where applicable;" (3) "[e]ach Plaintiff's final administrative order was issued in May 2023;" and (4) "to date, the DOE has not complied with either order."  *Id.* at 2.  In short, Plaintiffs' theory for joinder is that the New York City Department of Education "systemic[ally] fail[ed] to implement each Student's final administrative order timely," after each set of circumstantially similar Plaintiffs "prevailed in their respective IDEA proceeding against" DOE.  *Id.* at 3.

Under governing law as described in the Court's order to show cause, Dkt. No. 6, and this order, the Court is not persuaded that there is sufficient similarity between the two sets of Plaintiffs' claims to permit them to be filed in a single case.  That is, Plaintiffs have failed to show that joinder is proper.  The Court therefore exercises its discretion to drop an improperly joined party.  As discussed below, the claims of all Plaintiffs except Leonarda Bautista, as the parent and natural

guardian of J.B., and Leonarda Bautista individually, are dismissed without prejudice to refiling each of their claims in a separate civil action.

## II.    LEGAL STANDARD

While the text of Federal Rule of Civil Procedure 21 does not define "misjoinder," "[t]he cases make it clear that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)." 7 FED. PRAC. & PROC. CIV. § 1683 (3d ed. 2023). Rule 20(a)(1) permits joinder of multiple plaintiffs in one action if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). Rule 20, therefore, "permits joinder when the relief sought arises out of the same transaction, occurrence, or series of transactions or occurrences, and there is a common question of law or fact." *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583 (S.D.N.Y. 2014).

In interpreting the term "same transaction [or] occurrence" under Rule 20, "many courts [in the Second Circuit] have drawn guidance from the use of the same term in Rule 13(a), [which] appl[ies] to compulsory counterclaims." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 228 (E.D.N.Y. May 23, 2013) (collecting cases) (citation and internal quotation marks omitted); *see also Lyons v. Litton Loan Servicing LP*, No. 1:13-CV-513 ALC GWG, 2014 WL 5039458, at *3 (S.D.N.Y. Sept. 29, 2014) ("Courts in this district have used the Second Circuit's interpretation of [Rule] 13(a)(1)(A)'s 'transaction or occurrence' language as guidance in interpreting the Rule 20 requirement.").

When evaluating the "transaction or occurrence" language in the context of Rule 13(a), "the Second Circuit applies the 'logical relationship' test." *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557

(S.D.N.Y. 2013) (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004)); *accord N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 115 (S.D.N.Y. 2015) (in the context of deciding a Rule 21 motion, noting that "[w]hile '[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences,' courts 'repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims'"") (citations omitted).

> The Second Circuit explains the logical relationship test as follows:
>
> In determining whether a claim [in the Rule 13(a) context] 'arises out of the transaction . . . that is the subject matter of the opposing party's claim', this Circuit generally has taken a broad view, not requiring 'an absolute identity of factual backgrounds . . . but only a logical relationship between them.' This approach looks to the logical relationship between the claim and the counterclaim, and attempts to determine whether the 'essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"

*United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) (citations omitted); *accord In re EMC Corp.*, 677 F. 3d 1351, 1359 (Fed. Cir. 2012) ("To be part of the 'same transaction' requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts."). Likewise, in *Moore v. New York Cotton Exchange*, the U.S. Supreme Court interpreted the term "transaction" in the Rule 13 context as "a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." 270 U.S. 593, 610 (1926). Moreover, in the Second Circuit, "[a]lthough the 'logical relationship' test does not require 'an absolute identity of factual backgrounds,'" *Jones*, 358 F.3d at 209 (quoting *Aquavella*, 615 F.2d at 22), "at some point the essential facts and 'the thrust of the two claims [are] so basically different that such accepted 'tests of compulsoriness' as 'logical relation' [are] not met . . . ,'" *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978) (quoting *Ball v. Connecticut Bank & Tr. Co.*, 404 F. Supp. 1, 4 (D. Conn. 1975).

### III.   DISCUSSION

Here, the essential facts of the two sets of claims are not "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Aquavella*, 615 F.2d at 22 (quoting *Harris v. Steinem*, 571 F.2d at 123). Plaintiffs are two distinct individuals, with unique needs and differing underlying FAPEs, seeking enforcement of two different final administrative orders, issued for different time periods and by different IHOs, in different administrative proceedings. They have sought to do so by—improperly—joining each set of "basically different" plaintiffs' claims under Rule 20(a)(1) in a singular case. *See Harris*, 571 F.2d at 123.

Joinder under Rule 20(a)(1) is improper here because the essential facts that gave rise to each of student J.B.'s and student A.F.'s respective claims are not "so logically connected" as to dictate that the issues be resolved together. *See Aquavella*, 615 F.2d at 22. The underlying facts supporting each student's respective claim of a denial of a FAPE and their associated requests for declaratory and injunctive relief are distinct and unrelated; resolving the set of issues as to one Plaintiff provides no guidance as to how the Court should resolve the issues for the other Plaintiff.

Plaintiffs' two respective hearings were administered by different IHOs; and each IHO issued a FOFD that was unique to that child. *See* Compl. ¶¶ 40–41, 54–55. As to J.B., the complaint alleges that J.B. was denied a FAPE during the 2021–22 and 2022–23 school years. *Id.* ¶ 42. J.B.'s FAPE included "1:1 nursing services," "a 1:1 paraprofessional," "the cost of special education transportation with limited time travel, a 1:1 transportation nurse and/or paraprofessional, air conditioning, a lift bus, and a regular size wheelchair"—which J.B.'s parent and natural guardian, Leonarda Bautista, alleges DOE failed to fund. *Id.* ¶¶ 43–44, 65–66. By contrast, A.F. was allegedly denied a FAPE from April 5, 2022 through June 24, 2022, and for the 2022–23 school year. *Id.*

¶ 56. With respect to that time period, A.F.'s IHO ordered DOE to fund for A.F. "the costs of tuition and related services at iBrain and the costs of specialized transportation . . . between home and iBrain." *Id.* Those "related services" included individual-level occupational therapy, physical therapy, speech and language pathology, vision education services, assistive technology services, music therapy, and parent counseling and training. *See* Dkt. No. 1, Ex. 2, at ¶ 24(c) (A.F.'s FOFD). It is the failure of DOE "to implement" these differing final administrative orders of which Plaintiffs now complain. Compl. ¶ 65.

In Plaintiffs' Memorandum of Law, Plaintiffs state that the two sets of Plaintiffs are similarly situated in that they "both suffer from a traumatic brain injury, . . . attend the same private school, . . . receive similar related services from the same provider, . . . receive special transportation from the same company, . . . were both denied a FAPE by the [d]efendants," and are represented by the same counsel. *See* Pl.s' Mem. at 10, n.7. Although J.B. and A.F. may "coincidentally" share some circumstantial facts that lead up to their claims, *see In re EMC Corp.*, 677 F. 3d at 1359, the "essential facts" underlying the IHOs' respective orders mandating each student's differing FAPE—with each student's differing bundle of services based on each student's particular medical needs—differ greatly, *see Aquavella*, 615 F.2d at 22. To adjudicate DOE's alleged noncompliance with each respective IHO's FOFD, and to determine the reasonableness of any claimed attorneys' fees in turn, the Court must examine the underlying facts of each student's case. If the facts underlying one of the two student's claims turn out to be relatively more complex, such that a more significant amount of time devoted to the case by counsel would be reasonable, the attorneys' fees for that case may differ from those for the other student's case. Resolution of one of the two student's distinct set of claims provides no information or clarification to the Court regarding how to resolve the claims of the other student—who underwent an independent administrative hearing with their own IHO,

their own FAPE, and their own FOFD.

Plaintiffs argue that this is similar to *Parks v. District of Columbia*, because Defendants here—Plaintiffs claim—are applying a common policy to reduce rates and hours charged by Plaintiffs' counsel, as did the defendants in *Parks*. *See* Pl.s' Mem. at 3–4, 13; *see also* 275 F.R.D. 17, 19 (D.D.C. 2011). Thus, they argue, "there is a sufficient basis for finding a logical relationship between the two sets of Plaintiffs' fee requests such that they satisfy the first prong of Rule 20(a)." Pl.s' Memo at 4. This argument fails for three reasons. First, *Parks* is from a different circuit and therefore does not bind this Court, which has "broad discretion in determining whether to add or drop parties." *See Urban v. Hurley*, 261 B.R. 587, 593 (S.D.N.Y. 2001). Second, although Plaintiffs assert that "Defendants ostensibly apply a common policy when reviewing and reducing Plaintiffs' requests for attorneys' fees and costs under IDEA," Pl.s' Mem. at 3, Plaintiffs' complaint does not allege any such common policy, and the Court is presented with no facts that plausibly suggest that one exists, *see generally* Compl. Third, the *Parks* plaintiffs were seeking only attorneys' fees and costs. 275 F.R.D. at 18. By contrast, Plaintiffs here seek an award of reasonable attorneys' fees in addition to declaratory and injunctive relief, ordering Defendants to comply with the two differing, underlying IHO orders. Compl. ¶ 65. To determine whether DOE has failed to comply with implementing the underlying orders, the Court must examine, to at least some degree, what the underlying orders are—and these orders differ substantially for the two sets of Plaintiffs. Adjudicating this request for declaratory and injunctive relief therefore requires a fact-specific inquiry into the differing underlying orders of each case, responsive to each student's unique needs and circumstances.

Beyond *Parks*, two other District of Columbia District Court IDEA decisions—although also not binding on this Court—are more instructive here. *See Battle v. District of Columbia*, No. CIV.A.08-1449(JR), 2009 WL 6496484 (D.D.C. Apr. 29, 2009); *Davidson v. District of Columbia*, 736 F.

Supp. 2d 115 (D.D.C. 2010). As the *Battle* Court noted, claims are not logically related—and thus, are improperly joined under Federal Rule 20(a)(1)(A)—where "each plaintiff's claim is based on an entirely different set of facts and seeks separate relief for different injuries." 2009 WL 6496484, at *1–2. Here, J.B. and A.F. seek different substantive relief: J.B. seeks DOE's compliance with an order to fund, for the entire 2021–22 and 2022–23 school years, the cost of J.B.'s tuition and a series of special services, described above. By contrast, A.F. seeks funding for the partial 2021–22 school year and the entire 2022–23 school year, covering A.F.'s tuition and a series of different special services, described above. Given that each set of Plaintiffs' claims are "based on an entirely different set of facts and seeks separate relief for different injuries," *id.*, the claims are not logically related and were improperly joined.

Additionally, the court in *Davidson* denied joinder where the plaintiffs' claims "ar[o]se out of separate administrative proceedings that resulted in separate HODs [hearing officer determinations] issued on different dates involving, for the most part, different students." 736 F. Supp. at 121. The *Davidson* Court concluded that "beyond the fact that the claims all arise under the IDEA, the plaintiffs have offered nothing to indicate that their claims are logically related in any way." *Id.* Similarly, here each set of Plaintiffs' cases arose out of a separate administrative proceeding, overseen by a different IHO (Allana Alexander for J.B., and Jean Marie Brescia for A.F.), which resulted in separate FOFDs, issued on different dates (May 17, 2023 for J.B., and May 30, 2023 for A.F.), directing DOE to supply different packages of services to each student based on their unique needs and circumstances. *See* Compl. ¶¶ 38–44, 52–56. Such claims are not "logically related," *Davidson*, 736 F. Supp. at 121, because they do not share the same "essential facts," *Aquavella*, 615 F.2d at 22.

Because Plaintiffs have failed to satisfy the Rule 20(a)(1)(A) precondition for permissive

joinder of parties, Plaintiffs have misjoined the two sets of students' claims. *See* 7 FED. PRAC. & PROC. CIV. § 1683 (3d ed. 2003). Rule 21 provides a remedy for misjoinder: "[o]n motion or on its own, the court may at any time, on just terms . . . drop a party." Fed. R. Civ. P. 21. A court has "broad discretion in determining whether to add or drop parties," *Hurley*, 261 B.R. at 593. "The court may add or drop a party because of misjoinder . . . or to promote the efficient administration of justice." *Id.* The Court, in exercising this discretion, is guided by "principles of fundamental fairness and judicial efficiency." *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 619 (S.D.N.Y. 2015) (citation omitted).

In exercising its discretion to drop an improperly joined party, the Court finds that the inclusion of the second set of Plaintiffs here "will not foster the objectives of [Rule 20], but will result in prejudice, expense or delay." 7 FED. PRAC. & PROC. CIV. § 1652 (3d ed. 2023). As discussed, resolving the claims as to J.B. will in no way meaningfully assist the Court in resolving the claims as to A.F., which arise from different "essential facts" and are therefore not "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Aquavella*, 615 F.2d at 22.

The Court appreciates that Plaintiffs' counsel may anticipate that this lawsuit is simply a vehicle to obtain leverage over the defendant in order to expedite a settlement of their clients' disputes. If so, to them the agglomeration of what are effectively multiple lawsuits into one may seem to be expedient. After all, doing so allows them to obtain that result with respect to multiple cases for the price of one. But even assuming that the two sets of Plaintiffs' claims are ultimately resolved through settlement, misjoinder of these sets of claims into one is inefficient. The joinder of these two separate sets of claims into a single action will delay the resolution of the case as a whole: the case cannot be resolved until both sets of claims are resolved. If one set of Plaintiffs' claims are

capable of prompt resolution through settlement, while the other set's claims are more intractable, the first set of Plaintiffs will have to wait longer to see the benefit of a settlement, as they wait for the claims of the other set of Plaintiffs to be resolved.[1]

Moreover, the Court proceeds with the assumption that lawsuits are filed with the expectation that they will be litigated.  It is extremely inefficient to litigate what are effectively two separate actions in a single lawsuit.  Because of the different nature of the two groups of Plaintiffs' claims, the Court does not anticipate any synergies in pre-trial discovery.  Nor will there be meaningful synergies in any motion practice:  motion practice will turn on the particular factual circumstances of each set of Plaintiffs.  And were the action to proceed to trial, the claims of Ms. Bautista and Ms. Frias could not logically be tried jointly:  they present factually distinct claims.  In sum, permitting these misjoined claims to proceed in a single action would be extremely inefficient. Those inefficiencies are not offset by the marginal value of Plaintiffs' savings in filing fees and the cost of the preparation of a separate complaint.  Because the misjoined claims can be refiled in a new action at modest cost, the dismissal of those claims is not unfair.  Therefore, the Court concludes that the misjoined claims must be dismissed.

## IV.   CONCLUSION

Accordingly, the claims of all Plaintiffs except Leonarda Bautista, as the parent and natural guardian of J.B., and Leonarda Bautista individually, are dismissed without prejudice.

The Clerk of Court is directed to remove the names of all Plaintiffs except Leonarda Bautista, as parent and natural guardian J.B., and Leonarda Bautista, individually, from the caption of

---

[1]  The Court takes no position here as to whether or not Plaintiffs' counsel's decision to tether the resolution of two sets of their clients' claims gives rise to a potential conflict of interest that requires informed consent.  *See* New York State Rules of Professional Conduct, Rule 1.7.

this case.

      SO ORDERED.

Dated:  October 16, 2023
       New York, New York

                                            GREGORY H. WOODS
                                    United States District Judge

11